## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 11-81156-CIV-MIDDLEBROOKS/BRANNON

THANH NGUYEN, *et al.*,
  Plaintiffs,

v.

BARRY BIONDO, *et al.*,
  Defendants.

_____/

### OMNIBUS ORDER

THIS CAUSE comes before the Court upon the following: (1) Plaintiffs' Motions to Strike the Affidavits of Barry Biondo (DEs 86; 93); (2) Plaintiffs' Motion for Summary Judgment (DE 79), filed May 14, 2012; and (3) Defendants' Motion for Summary Judgment (DE 80), filed May 14, 2012. I have reviewed the record and am otherwise fully advised in the premises.

### I. Background

Plaintiffs Thanh Nguyen ("Thanh") and Luong Nguyen ("Luong") initiated this action against Defendants Barry Biondo ("Biondo") and Tipsy Spa and Salon, Inc., ("Tipsy, Inc.") alleging Defendants both breached the terms of the Parties' Business Sale Agreement ("Agreement") and violated state and federal trademark law by using the "Tipsy" mark. Specifically, Plaintiffs assert claims for federal trademark infringement, false designation of origin, Florida common law trademark infringement (collectively, "Trademark Infringement Claims"), cybersquatting, dilution, unjust enrichment, and

breach of contract. Both Plaintiffs and Defendants move for summary judgment on all counts of Plaintiffs' Amended Complaint.

## II. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(c), a district court's decision to grant summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of material fact is genuine where the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *See Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993)).

A district court's central inquiry when determining whether it should grant a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). After the parties have had adequate time to conduct discovery and a party files a motion for summary judgment, a district court must grant summary judgment against a party who fails to establish the existence of an element essential to his case that he bears the burden of proof on during trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

The moving party bears the initial burden of demonstrating to the court that the record does not contain any genuine issues of material fact to be determined at trial. *See*

*Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Whether a fact is material or not is a question that requires the moving party to defer to substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Pursuant to Rule 56, a moving party may accompany its motion for summary judgment with supporting affidavits; however, the movant is not required to file any affidavits. *See* Fed. R. Civ. P. 56(a)-(b).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d 590, 593-94 (11th Cir. 1995) (per curiam) (internal citation and quotations omitted). In addition, the dispute must have a "real basis in the record" in order to constitute a genuine dispute of fact. *Pace v. Capobianco,* 283 F.3d 1275, 1278 (11th Cir. 2002) (quoting *Mize,* 93 F.3d at 742) (internal quotations omitted). Thus, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England,* 432 F.3d 1321, 1327 (11th Cir. 2005).

While conclusions and unsupported facts alone are insufficient to oppose a summary judgment motion, a district court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir. 1995) (citing *Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro,* 38 F.3d 1571, 1578 (11th Cir. 1994) (per curiam)). In order to

demonstrate a genuine issue, the party opposing entry of summary judgment must establish sufficient evidence upon which a jury could reasonably rule in his favor; therefore, a mere "scintilla of evidence" alone is insufficient. *See Liberty Lobby,* 477 U.S. at 252, 106 S. Ct. at 2512. If the party opposing summary judgment produces any evidence, a district court must accept it as true and draw "all justifiable inferences" in his favor. *See id.* at 255, 106 S. Ct. at 2513.

### III. Motions to Strike

Before addressing the merits of the Parties' respective Motions for Summary Judgment, I must first resolve a preliminary issue raised by Plaintiffs in their Motions to Strike Defendant Barry Biondo's Affidavits (DEs 86; 93). Defendants failed to respond to the Motions to Strike, which "may be deemed sufficient cause for granting [a] motion by default." *See* S.D. Fla. L.R. 7.1(c). After considering the record, and noting that Defendants' failure to respond to Plaintiffs' Motions to Strike is just another example of the pattern of misconduct which Defendants have engaged in throughout the course of this litigation, I find sufficient cause exists to grant Plaintiffs' Motions to Strike by default.

Nevertheless, Plaintiffs' Motions to Strike should also be granted on the merits. In their Motions to Strike, Plaintiffs argue that Biondo intentionally engaged in misconduct designed to impede their abilities to engage in meaningful discovery. Specifically, two days before discovery closed, Biondo produced a journal in which he recorded his recollections of the events that transpired prior to the time the Parties signed the Agreement. After they received the journal, Plaintiffs rushed to take Biondo's continued deposition before discovery closed, but, during his deposition, Biondo claimed

he could not recall the events that he recorded in his journal. (*See, e.g.*, Biondo Depo. 308:8-9).

Despite his numerous representations that he could not recall the events he wrote about in his journal because of his "very bad memory" (Biondo Depo. 290:3), Biondo submitted sworn affidavits that include excerpts from his journal, that he previously could not recall, verbatim. (*Compare* Biondo Aff. at ¶ 6 *with* Biondo Depo. 308:7-25). Notably, Biondo failed to explain how he triggered his "very bad memory" between the time Plaintiffs took his deposition and the time he submitted his affidavits.

After comparing Biondo's affidavits with his deposition, I am left to conclude Biondo either (1) remembered the events he recorded in his journal and intentionally failed to answer Plaintiffs' questions during his deposition or (2) copied the entries into his affidavit even though he did not remember the events he recorded in his journal. Regardless, under either alternative, Biondo's affidavits must be excluded. Accordingly, Plaintiffs' Motions to Strike are granted, and, I will not consider Biondo's affidavits when determining whether either Party is entitled to judgment as a matter of law.

**IV. Discussion**

    1. <u>Trademark Infringement Claims Under Federal and Florida Law</u>

        *A. Plaintiffs' Claims for Federal Trademark Infringement, False Designation of Origin, and Florida Common Law Trademark Infringement*

"The term 'trademark' includes any word, name, symbol, or device, or any combination thereof-- (1) used by a person, or (2) which a person has a bona fide intention to use in commerce and applies to register . . . , to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to

indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. In order for a registrant to prevail on a federal trademark infringement claim under 15 U.S.C. § 1114 or Florida law, the registrant must show (1) its mark has priority and (2) the alleged infringer's unauthorized use was likely to cause consumer confusion. *See Optimum Techns., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (setting forth the elements of a federal claim for trademark infringement); *see Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252, 256 (11th Cir. 2006) (providing "that the analysis of the Florida statutory and common law claims of trademark infringement . . . is the same as under the federal trademark infringement claim") (additional citation omitted). If a party prevails on his section 1114(a)(1) claim of trademark infringement, he will also recover on his false designation of origin claim brought "pursuant to Section 1125 . . . because Section 1125(a) is broader than Section 1114 in that it covers false advertising or description whether or not it involves trademark infringement." *Babbit Elecs, Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994) (internal citations omitted).

Plaintiffs are in the business of owning and operating full service hair and nail salons that serve alcohol to patrons. (Thanh Aff. at ¶ 2; Luong Aff. at ¶ 2). Thanh first used the "Tipsy" mark on or about December 15, 2006. (Thanh Aff. at ¶ 5). In January of 2007, Plaintiffs opened the Tipsy salon located at 1037 State Road 7, Suite 112, Wellington, Florida, 33414 ("Wellington Tipsy"). (Thanh Aff. at ¶ 6). Shortly thereafter, Thanh applied to register the "Tipsy" mark with the United States Patent and Trademark Office ("USPTO") (Thanh Aff. at ¶ 7), which the USPTO granted on November 11, 2008 (*see* DE 79- Attachment 1 at 2). Thanh owns the rights to use the registered "Tipsy" mark

(Reg. No. 3,529,699) in connection with bar services. The state of Florida also granted Thanh a "Tipsy" trademark on November 19, 2009. (*See* DE 79- Attachment 2 at 2).

In between the time that Thanh applied for and was granted the rights to use the "Tipsy" mark, Thanh and Defendant Barry Biondo ("Biondo") orally agreed that Thanh would sell Biondo a 50% interest in the Wellington Tipsy. (Thanh Aff. at ¶ 14). The Parties' relationship rapidly deteriorated, and, on March 11, 2010, Plaintiffs and Biondo entered into an agreement ("Agreement"). (Thanh Aff. at ¶ 21; Agreement at ¶ 1). Plaintiffs agreed to sell Biondo their remaining interest in the Wellington Tipsy for $164,000 (Thanh Aff. at ¶ 21; Agreement at ¶ 1) and authorized Biondo to use the "Tipsy" mark until March 11, 2011 (Thanh Aff. at ¶ 24; Agreement at ¶ 8). Biondo did not purchase the right to the use the "Tipsy" name "or any mark associated with that business name." (Agreement at ¶ 8). Since March 11, 2011, Defendants have continued using the "Tipsy" mark. (Thanh Aff. at ¶¶ 30; 32). In fact, on March 21, 2011, Biondo filed a federal trademark application for his own mark that incorporates the name "Tipsy." (Biondo Depo. 171:5-24).

Plaintiffs contend Defendants' use of the "Tipsy" mark has led to consumer confusion. In her sworn statement, Catherine Hasson ("Hasson"), the manager of Tipsy of Jupiter Spa and Salon ("Jupiter Tipsy"), represented that at list five (5) times a week an individual will mistakenly book an appointment at the Wellington Tipsy instead of the Jupiter Tipsy, and, vice versa. (Hasson Aff. at ¶¶ 9-10). Additionally, Hasson stated that individuals often try to pay for the services they receive at the Jupiter Tipsy with coupons or gift cards issued by the Wellington Tipsy. (Hasson Aff. at ¶ 11).

7

After considering this evidence, I conclude Plaintiffs bore their initial burden of demonstrating that they are entitled to summary judgment on their claim for trademark infringement under the Lanham Act. Thanh's prior registration of the "Tipsy" mark gives rise to a presumption of the mark's validity and priority. *See Coach House Rest. v. Coach and Six Rest.,* 934 F.2d 1551, 1562 (11th Cir. 1991). When determining whether two marks are likely to cause consumer confusion, district courts apply a seven-factor test to assess whether a consumer is likely to confuse the marks. A court will consider (1) the type of mark; (2) the similarity of the marks; (3) the similarity of the products the marks represent; (4) the similarity of the parties' stores and customers; (5) the similarity of advertising media; (6) the defendant's intent; and (7) actual consumer confusion. *See Frehling Enterps., Inc. v. Int'l Select Grp., Inc.,* 192 F.3d 1330, 1335 (11th Cir. 1999). Through Hasson, Plaintiffs submitted numerous examples of actual confusion experienced by both Wellington Tipsy's and Jupiter Tipsy's customers. Evidence of actual confusion is strong evidence that Defendants' unauthorized use of the "Tipsy" mark is likely to cause consumer confusion. *See Dieter v. B & H Indus. of Southwest Fla., Inc.,* 880 F.2d 322, 326 (11th Cir. 1989).

Defendants do not dispute that Thanh registered the "Tipsy" mark with the federal and state government (*See* DE 90 at 5; *see also* DE 97 ("Defendants are not challenging the Plaintiffs' [sic] ownership of the Tipsy mark, but they are challenging they [sic] quality control of services and goods produced under the Tipsy mark for the Tipsy stores [sic] located in Wellington[,] which has resulted in their abandonment to the exclusivity of their mark for this geographic area.")) or that Defendants' use of the "Tipsy" mark is likely to cause consumer confusion.

Instead, Defendants assert they are entitled to summary judgment on Plaintiffs' claim for trademark infringement under the Lanham Act because Thanh abandoned his rights to the "Tipsy" mark in "the geographical area of Wellington, Florida." (*See* DE 90 at 5). "Abandonment is trademark law's way of recognizing that "[t]rademark rights flow from use.'" *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1173 (11th Cir. 2002) (quoting in part *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1550 (11th Cir. 1987)).

Defendants' legal argument is difficult to parse. However, it appears Defendants believe Thanh abandoned his rights to the "Tipsy" mark because he engaged in naked licensing by failing to maintain sufficient control over the mark from May 2008 until the present.  (*See* DE 80-Attachment 2 at 3-4). "The owner of a trademark has not only a right to license the use of his trademark to others, but also a concurrent duty to exercise control and supervision over the licensee's use of the mark." *Sheila's Shine Prods., Inc. v. Sheila Shine, Inc.* 486 F.2d 114, 123-24 (5th Cir. 1974). (citation omitted).  In order to prove a trademark holder abandoned his rights to a mark due to naked licensing, a purported infringer must show that the mark holder failed "to properly supervise its licensee's use of the mark." *Prof'l Golfers Ass'n of Am. v. Bankers Life & Cas. Co*, 514 F.2d 665, 671 (5th Cir. 1975). A former trademark "licensee is estopped from contesting the validity of the licensor's title during the course of the licensing arrangement"; however, a former licensee can challenge a licensor's rights to the mark based upon facts that occurred after the license expired. *Id.*

As set forth in the Agreement, Defendants' license to use the "Tipsy" mark expired on March 11, 2011. Defendants failed to include any evidence establishing that

Thanh engaged in naked licensing after March 11, 2011, which could serve as a basis to support their affirmative defense of abandonment. Thus, Plaintiffs, not Defendants, are entitled to summary judgment on Plaintiffs' claim for trademark infringement under the Lanham Act because Defendants failed to establish a prima facie case of abandonment— let alone demonstrate that a genuine issue of material fact exists with respect to Plaintiffs' claim for trademark infringement.  As discussed above, since Plaintiffs are entitled to judgment as a matter of law on their claim for trademark infringement under the Lanham Act, Plaintiffs are also entitled to judgment as a matter of law on their claims for false designation of origin under the Lanham Act and common law trademark infringement.

### B.  Cybersquatting

To prevail under the Anti-Cybersquatting Consumer Protections Act, *see* 15 U.S.C. § 1125(d), a plaintiff must prove that "(1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252, 256 (11th Cir. 2006).

As discussed above, Plaintiffs presented unrebutted evidence that Thanh owned the exclusive rights to the distinctive "Tipsy" mark by submitting evidence showing that the mark is registered with the USPTO. Also, by introducing examples of actual consumer confusion, Plaintiffs demonstrated that Defendants' nearly-identical domain name, "www.tipsyspa.com" is confusingly similar to their domain name "www.tipsyjupiter.com." Plaintiffs proved Defendants' bad faith intent to profit off their infringing activities by introducing evidence of both Defendants' ongoing willful

unauthorized use of the "Tipsy" mark and Biondo's attempt to register his own mark using the "Tipsy" name. Finally, Plaintiffs further established Defendants acted in bad faith by introducing evidence that Defendants failed to abide by the express terms of the Agreement which explicitly precluded Defendants from using "Tipsy" in their domain name after March 11, 2011 (Agreement at ¶ 8). Defendants failed to rebut any of these facts; thus, Plaintiffs are entitled to entry of summary judgment on their claim for cybersquatting.

### C. Remedies

#### i. Damages Under Lanham Act

Plaintiffs seek statutory damages for their federal trademark infringement claim under 15 U.S.C. § 1117(c) and for their cybersquatting claim under 15 U.S.C. § 1117(d). When awarding statutory damages, a district court enjoys wide discretion. *See Cable/Home Commc'n Corp. v. Network Prods. Inc.,* 902 F.2d 829, 852 (11th Cir. 1990).

#### 1. Section 1117(c)

In lieu of seeking actual damages arising from Defendants' unauthorized use of the "Tipsy" mark, Plaintiffs opt to recover statutory damages pursuant to 15 U.S.C. § 1117(c). In 1995, Congress added section 1117(c), the statutory damage provision of the Lanham Act, because "counterfeit records are frequently nonexistent, inadequate, or deceptively kept . . . making proving actual damages in these cases extremely difficult if not impossible." *PetMed Express, Inc. v. MedPets.Com, Inc.,* 336 F. Supp. 2d 1213, 1219-20 (S.D. Fla. 2004) (quoting *Tiffany Inc. v. Luban,* 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003). Section 1117(c) provides:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or

> distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services.   .   .   .

15 U.S.C. § 1117(c). "[T]he term counterfeit mark means . . . a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered." 15 U.S.C. § 1116(d)(1)(B)(i). As previously discussed, Plaintiffs proved Defendants are liable for federal trademark infringement pursuant to 15 U.S.C. § 1114(1)(a) by demonstrating that Defendants' unauthorized use of the "Tipsy" mark at the Wellington Tipsy and in its domain name caused consumer confusion.

The range of potential statutory damages that a court may award under section 1117(c) varies depending upon whether or not the use of the mark was willful. The statute provides in pertinent part that a plaintiff may be awarded statutory damages in the amount of:

> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c)(1)-(2). Plaintiffs contend they are entitled to recover as much as $2,000,000 per counterfeit mark because Defendants use of the "Tipsy" mark was willful. Willful infringement occurs "when the infringer acted with actual knowledge or reckless

disregard for whether its conduct infringed upon the plaintiff's" trademark. *See Arista Records, Inc. v. Beker Enter., Inc.,* 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003).

The evidence demonstrates that Defendants' infringement was willful. In the Agreement, Biondo acknowledged that Thanh owned the rights to the "Tipsy" mark and that he was only entitled to use the mark until March 11, 2011. Furthermore, Biondo promised to stop using the "Tipsy" mark at the Wellington Tipsy and in the Wellington Tipsy's domain name after March 11, 2011. Nevertheless, Defendants continue to use the "Tipsy" mark. Since Defendants' infringement was willful, Plaintiff is entitled to statutory damages under section 1117(c)(2). 15 U.S.C. § 1117(c)(2). Plaintiffs request an award of $800,000 to compensate them for Defendants' use of the Tipsy mark at the Wellington Tipsy and in itheir domain name, an award of $400,000 per violation. After considering the record and taking into account the fact that Defendants' numerous discovery violations prevented Plaintiffs from calculating their actual damages, I find an award of $800,000 ($400,000 per infringing mark) is reasonable and will compensate Plaintiffs for the damage they suffered as a result of Defendants' infringement and deter other individuals from infringing upon a protected trademark.

### 2. Section 1117(d)

Since Plaintiffs prevailed on their claim under the Anti-Cybersquatting Consumer Protection Act, Plaintiffs seek and are entitled to recover damages under 15 U.S.C. § 1117(d), which provides: "[i]n a case involving a violation of section 1125(d)(1) of this title, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the

court considers just." *See* 15 U.S.C. § 1117(d). Plaintiffs seek an award of $50,000. I find an award of $50,000 is reasonable considering Defendants' intentional infringement.

### ii.  Injunctive Relief under Lanham Act

Plaintiffs are further entitled to an order enjoining Defendants from further infringing upon the "Tipsy" mark pursuant to 15 U.S.C. § 1116(a), which provides in pertinent part that this Court "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116(a). Plaintiffs are entitled to injunctive relief because they successfully demonstrated Defendants willfully infringed upon the "Tipsy" mark. Thus, I opt to exercise this Court's equitable powers to permanently enjoin Defendants from using the "Tipsy" mark.

### iii.  Florida Common Law Trademark Infringement

Plaintiffs are entitled to judgment as a matter of law on their claim for common law trademark infringement. In their Complaint, Plaintiffs allege they are entitled to damages, attorneys fees, costs, and punitive damages due to Defendants' intentional infringement of the "Tipsy" mark. (*See* DE 1 at ¶ 93). Yet, in their Motion for Summary Judgment, they fail to quantify the actual damages they incurred or suggest an appropriate amount of punitive damages. If Plaintiffs seek actual or punitive damages, they must file a motion within thirty (30) days from the date of this Order that sets forth the amount of damages they seek to recover under this claim.

### iv.  Attorneys Fees

Plaintiffs move the Court to award them their attorneys fees; however, only "in exceptional cases may [the court] award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "The legislative history indicates that a court should only award attorney fees in cases 'characterized as malicious, fraudulent, deliberate and willful.'"*Dieter v. B & H Indus. of S.W. Fla., Inc.,* 880 F.2d 322, 329 (11th Cir. 1989) (quoting in part *St. Charles Mfg. Co. v. Mercer,* 737 F.2d 891, 894 (11th Cir. 1983)). Due to Defendants' intentional infringement, I find Plaintiffs, as the prevailing party, are entitled to recover their reasonable attorneys fees and costs.

### 2. Breach of Contract

Defendants and Plaintiffs both move for summary judgment on Plaintiffs' claim for breach of contract. To succeed on a breach of contract claim, Florida law requires a plaintiff to plead and establish: (1) the parties entered into a contract; (2) the defendant materially breached the contract; and (3) the plaintiff suffered damages as a result of the breach. *See, e.g., Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008).

On March 11, 2010, the Parties entered into a contract, the Agreement. (*See* Agreement; Thanh Aff.  at ¶ 21). Defendants concede that the Parties entered into a contract but contend they should be entitled to void the contract as a matter of law because (1) the purpose of the contract was frustrated and (2) Biondo executed the contract under duress.

First, Defendants argue the contract is voidable because the purpose of the contract was frustrated. (*See* DE 80 at ¶ 2(c)). At this stage of the litigation, I will not consider the affirmative defense of commercial frustration because Defendants raised this defense for the first time in their Motion for Summary Judgment. (*See* DE 80 at ¶ 2(c)).

Second, Defendants contend they are entitled to void the Agreement on the grounds of duress because Biondo "felt like he had no choice but to sign the" Agreement.

Biondo bears the burden of proving that his decision to execute the Agreement was the product of duress. *See Cowen v. Cowen,* 95 So. 2d 584, 586 (Fla. 1957). To set aside a contract on the basis of duress, the threatened party must prove the following two elements coexisted at the time he signed the contract: (1) that he signed the contract involuntarily and against his will and (2) that his "condition of mind was caused by some improper and coercive conduct of the opposite side." *City of Miami v. Kory,* 394 So.2d 494, 497 (Fla. 3d DCA 1981). Defendants failed to prove either element existed at the time Biondo signed the Agreement.

During the course of his deposition, Biondo stated one of the reasons why he signed the Agreement was to end Plaintiffs' "actual interference with [his] business." (Biondo Depo. 107:22-25). He also stated his "obvious" intention in entering into the Agreement was to become "the sole owner" of the Wellington Tipsy and to stop "the [Plaintiffs from] interfering with the business." (Biondo Depo. 108:1-6). These statements demonstrate that Biondo voluntarily signed the Agreement in order to become the sole owner of the Wellington Tipsy.

Even if Biondo proved he signed the Agreement against his will, Defendants did not introduce evidence that proves Plaintiffs engaged in improper or coercive conduct. Defendants argue Biondo entered the Agreement because (1) Plaintiffs threatened the success of the Wellington Tipsy with their interruptions and (2) Thanh offered to drop his law suit against Biondo if he signed the Agreement. At the time Plaintiffs allegedly interfered with the operations of the Wellington Tipsy, Plaintiffs' actions were legal

because Luong owned 50% of the Wellington Tipsy. (Biondo Dep. 108:17-20). Also, Biondo failed to introduce evidence that establishes Thanh's Petition for Injunction Against Repeat Violence ("Petition") against Biondo was either improper or coercive. Generally, the threat of taking lawful action does not constitute duress, accordingly, if Thanh has a basis for filing the Petition, his offer to voluntarily dismiss the Petition is neither improper nor coercive. *See Tyler v. Hill Bros.,* 127 Fla. 419, 173 So. 147 (1937).

Thanh filed his Petition against Biondo on September 16, 2009. (*See* DE 87- Attachment 5 at 2-3). As a basis for the Petition, Thanh alleged the following: (1) on September 15, 2009, Biondo threatened Thanh and "head[-]butted" him and (2) on July 2, 2009, Biondo grabbed Thanh and pushed him. (*See* DE 87- Attachment 2 at ¶¶ 3-4). Both of these incidents occurred at the Wellington Tipsy (*see* DE 87- Attachment 2 at ¶¶ 3-4) and the police arrived after both incidents (*see* DE 87- Attachment 2 at 5-6 (stating in the September 15, 2009, police report that Thanh and Biondo both stated they were "involved in a verbal altercation over business matters" and Thanh stated he "felt threatened by Biondo and . . . [Biondo's] aggression towards him"); *see* DE 87- Attachment 2 at 1-3 (stating in the July 2, 2009, police report that the officer saw a "slight bruise on [Thanh's] right shoulder" and he would "file battery charges on Biondo"). Notably, Biondo did not deny these events occurred or point to evidence in the record that contradicts these facts. Nevertheless, these allegations demonstrate Thanh had a basis for filing the Petition; thus, his offer to withdraw his Petition cannot serve as a basis for Defendants' defense of duress. Additionally, Thanh's Petition could not have caused Biondo to sign the Agreement because Thanh voluntarily dismissed his Petition

on October 26, 2009, over four months before Biondo executed the Agreement. (*See* DE 87- Attachment 2 at 1).

Since Defendants failed to establish that the Agreement is voidable, I must consider whether Plaintiffs established Defendants breached the Agreement. Plaintiffs argue Defendants breached the Agreement by (1) failing to pay the amount due under the Agreement, (2) using the "Tipsy" mark after March 11, 2011, and (3) refusing to provide real property to Plaintiffs, which Biondo pledged as security. If Plaintiffs proved Defendants breached the Agreement by failing to pay the purchase price it is unnecessary to consider the other breaches.

It is undisputed that Biondo purchased Luong's 50% share of the Wellington Tipsy for $164,000. On the day the Parties executed the Agreement, Biondo was required to, and did, pay Plaintiffs $20,000. To pay off the balance of $144,000, Biondo was required to make weekly payments of $800 to Plaintiffs.  (Agreement at ¶ 1). Biondo failed to consistently make the weekly payments, and, on May 19, 2011, Biondo stopped making any payments altogether. (Thanh Aff. at ¶ 26).  Defendants do not dispute these factual allegations or designate any facts demonstrating that a genuine issue of material fact exists as to whether Biondo failed to pay the entire purchase price.

Accordingly, the only issue that remains to be determined is the issue of damages. Clearly, Plaintiffs suffered damages when Biondo failed to pay the balance of the purchase price. As of the date Plaintiffs filed their Motion for Summary Judgment, Biondo owed Plaintiffs $108,200 in principle. The outstanding balance only represents a portion of the damages Plaintiffs sustained as a result of Biondo's breach. The Agreement provides that Plaintiffs are also entitled to collect late fees and any attorneys fees they

incurred pursuing their claim for breach of contract. (Agreement at ¶¶ 2-3). While Plaintiffs are entitled to judgment as a matter of law on their breach of contract claim, at this time, I am unable to award Plaintiffs damages. Plaintiffs shall submit a motion within thirty (30) days from the date of this Order that sets forth the amount of principle, late fees, attorneys fees, and costs they are entitled to recover under their claim for breach of contract.[1]

### 3. Unjust Enrichment

To prevail on a cause of action for unjust enrichment under Florida law, a plaintiff must prove that: 1) the plaintiff has conferred a benefit on the defendant, 2) the defendant had knowledge of the benefit conferred, 3) the defendant accepted and retained the benefit, and 4) it would be inequitable for the defendant to retain the benefit without compensation to the plaintiff. *See N.G.L. Travel Assocs. v. Celebrity Cruises, Inc.*, 764 So.2d 672, 675 (Fla. 3d DCA 2000). In Florida, a plaintiff cannot succeed on a claim for unjust enrichment, a form of equitable relief, if an express contract exists. *See Morris v. ADT Sec. Servs.*, 580 F. Supp. 2d 1305, 1312-13 (S.D. Fla. 2008). Plaintiffs attempt to circumvent this rule by arguing that they "have not alleged unjust enrichment based on" the Agreement because "[t]his claim applies to Defendants' continuing infringement" of the "Tipsy" mark without compensation to Thanh. (*See* DE 79 at 28-29). This allegation does not support a claim for unjust enrichment because Thanh did not confer the benefit of using the "Tipsy" mark on Defendants after March 11, 2011, indeed, Defendants used the mark without Thanh's authorization. This Court's prior findings that Defendants are

---

[1] In count seven, Plaintiffs allege Defendants breached the Agreement and Plaintiffs are entitled to entry of an order permanently enjoining Defendants from using the "Tipsy" mark. Previously, I ruled Plaintiffs are entitled to entry of a permanent injunction; thus, it is unnecessary to consider count seven.

liable for trademark infringement and breach of contract preclude Plaintiffs from prevailing on their claim for unjust enrichment.

    4.  <u>Trademark Dilution</u>

Finally, Plaintiffs assert a claim for dilution of the "Tipsy" mark pursuant to Florida Statute § 495.151, which provides in pertinent part that "[t]he owner of a mark that is famous in this state shall be entitled . . . to an injunction and to obtain such other relief against another person's commercial use of a mark or trade name if such use begins after the mark has become famous and is likely to cause dilution of the distinctive quality of the famous mark, as provided in this section." Fla. Stat. § 495.151. To prevail on a claim for trademark dilution, a mark owner does not need to show that another person's commercial use is likely to cause consumer confusion. Fla. Stat. § 495.151.

Previously, I ruled that the "Tipsy" mark is distinctive and entitled to protection. Defendants' use of the mark is likely to cause dilution because Defendants are using a virtually-identical trade name and service mark to promote the Wellington Tipsy. Undoubtedly, the commercial value of Thanh's mark is likely to be diluted by Defendants' unauthorized use, which will create a likelihood of injury to Thanh's business reputation. *Freedom Sav. and Loan Ass'n v. Way,* 757 F.2d 1176, 1186 (11th Cir. 1985), *cert. denied,* 474 U.S. 845, 106 S. Ct. 134, 88 L. Ed. 2d 110 (1985). On the basis of these prior findings, I conclude that Plaintiffs are entitled to relief under section 495.151 in the form of entry of a permanent injunction prohibiting Defendants from using the "Tipsy" mark.

**V. Conclusion**

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that:

1. Plaintiffs' Motions to Strike the Affidavits of Barry Biondo (DEs 86; 93) are **GRANTED;**

2. Plaintiffs' Motion for Summary Judgment (DE 79) is **GRANTED IN PART AND DENIED IN PART**; and

3. Defendants' Motion for Summary Judgment (DE 80) is **DENIED.**

It is further

**ORDERED AND ADJUDGED** that:

1. The Clerk of Court is directed to enter judgment in favor of Plaintiffs on counts one through four, count six, and counts eight through nine;

2. Count five of Plaintiffs' Amended Complaint is **DISMISSED WITH PREJUDICE;**

3. Upon entry of this Order, Defendants are permanently enjoined from using the "Tipsy" mark.

4. The Clerk of Court shall **CLOSE THIS CASE**; and

5. All pending motions shall be **DENIED AS MOOT.**

Finally, it is hereby

**ORDERED AND ADJUDGED** that within **thirty (30) days** from the date of this Order, Plaintiffs may submit a Motion in which they will set forth both the amount of damages they are entitled to recover under their claims for breach of contract and common-law trademark infringement. Additionally, Plaintiffs shall set forth in the Motion the amount of attorneys fees and costs they seek to recover.

**DONE and ORDERED** in Chambers, at West Palm Beach, Florida this

_____ day of June, 2012.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to Counsel of Record